VACCARO, Respondent, v. VACCARO, Appellant.

No. 372. Submitted under sec. (Rule) 251.54 March 6, 1975.—
Decided March 28, 1975.
(Also reported in 227 N. W. 2d 62.)

478

480

For the appellant the cause was submitted on the brief of *Ruppa & Wegner* of Milwaukee.

For the respondent the cause was submitted on the brief of *Eugene A. Crossot* of Milwaukee.

BEILFUSS, J.    Two issues are dispositive of this appeal:

1.  Are the provisions relating to life insurance in the amended judgment of divorce part of the division of the estate or part of child support?

2.  Did the stipulation between the parties regarding the content of the judgment of divorce insofar as it involved provisions for the children result in contractual obligations making the children third-party beneficiaries?

Mrs. Vaccaro's first contention on appeal is that subsequent to the order of April 3, 1957, the court was without authority to modify the judgment with respect to the

life insurance because, in her view, the provisions regarding life insurance are related to the division of the parties' estate rather than to alimony or support.

The significance of the distinction lies in the fact that while provisions for alimony and child support may be modified at any time,[1] the authority of the court to change the property settlement or division of estate "expired sixty days after the term at which such judgment was rendered. Sec. 269.46 (3), Stats."[2]

It should be noted that the parties and the trial court seem to regard the April, 1957, revision of the divorce judgment as incorporating the final division of property even though the original judgment does make certain settlement provisions. It would appear that the 1957 revision is violative of the sixty-day rule, but a comparison of the original judgment with the 1957 revision reveals that the former is incomplete in many respects as far as division of the property is concerned and was likely intended to be an interim measure. The preface to the 1957 revision indicates clearly that such revision is intended to encompass the actual settlement.

The question, therefore, is whether the provisions for life insurance in the 1957 revision of the divorce judgment are part of the property settlement or part of the child support provisions.

The language of the 1957 revision provides, with respect to five specifically identified policies of insurance on the life of Dr. Vaccaro, totalling $48,000:

". . . that the children of the parties, to wit: Eugene, Paul and Jon Vaccaro, are designated as the irrevocable beneficiaries, and before any change can be made in

---

[1] Sec. 247.32, Stats.

[2] *Anderson v. Anderson* (1959), 8 Wis. 2d 133, 138, 98 N. W. 2d 434. *See also:* Sec. 247.32, Stats.; *Hooker v. Hooker* (1959), 8 Wis. 2d 331, 338, 99 N. W. 2d 113; *Trowbridge v. Trowbridge* (1962), 16 Wis. 2d 176, 180, 114 N. W. 2d 129; *Sholund v. Sholund* (1967), 34 Wis. 2d 122, 127, 148 N. W. 2d 726.

these policies permission from the Court must be obtained.

"That the defendant shall, as the premiums on said policies from time to time become due, exhibit to the plaintiff proof of payment of such insurance premiums; that said policies of insurance cannot be cancelled or collateralized for loans without first obtaining authority from the court to so do.

"That no person or persons other than the plaintiff, during her lifetime, shall have any control over the proceeds of said insurance policies, which shall be payable to the children herein named, during their minority, which said proceeds shall have become payable by reason of the death of the defendant."

A question of construction thus arises as to the meaning of the revised judgment. " 'Judgments are to be construed like other written instruments.' " *Estate of Boyd* (1963), 18 Wis. 2d 379, 382, 118 N. W. 2d 705; *R. B. General Trucking v. Auto Parts & Service* (1958), 3 Wis. 2d 91, 98, 87 N. W. 2d 863. We conclude that the only reasonable construction of the 1957 revision of the judgment is that the insurance provisions relate to child support and maintenance and not to property settlement.

First, the court's repeated reference in the document to the fact that the policies may not be changed, cancelled or collateralized, "without first obtaining authority from the court to do so," is strong evidence that the court intended the provision to be part of child support, because if it were part of the property settlement the court would have no authority to grant such permission. *See Ausman v. Ausman* (1966), 31 Wis. 2d 79, 85, 141 N. W. 2d 869, where, in a similar situation we held that the phrase, " 'until the further order of the court,' " used in regard to the right of a wife to occupy the homestead, as provided in the judgment of divorce, "is consistent with the concept that the use of the home is relevant to alimony and support rather than final division."

Secondly, the revised judgment clearly indicates that the children are the beneficiaries of the policies. A final property division can be made only between husband and wife. Sec. 247.26, Stats. Therefore the provision is clearly a part of child support. In *Beberfall v. Beberfall* (1972), 54 Wis. 2d 329, 332, 333, 195 N. W. 2d 625, a case dealing with the precise issue under consideration here, this court stated:

"In oral argument counsel for appellant asserted that the insurance provisions in the divorce judgment are part of the property settlement rather than part of the support payments and are therefore not subject to modification. Reliance was placed upon *Couch on Insurance. Couch* refers to insurance provisions which require that the *wife* be the beneficiary of the insurance policy. In the present case only the children were made beneficiaries, and the trial court specifically found that it was the intention of the parties that this provision was to provide support for the children in the event of their father's death. Thus on the facts of this case the insurance provisions in the divorce judgment are clearly to provide support for the children in the event respondent dies."

Such is the case here, as to both the designation of beneficiaries and the finding of the trial court.

The revised judgment is unambiguous as to whether the insurance provisions relate to child support or property settlement. Because a judgment is to be construed like any other instrument, *Estate of Boyd, supra,* resort to the subjective intent of the court and parties is unnecessary. *Stack Construction Co. v. Chenenoff* (1965), 28 Wis. 2d 282, 287, 137 N. W. 2d 66. However, even going beyond the revised judgment in the instant case, the transcript of the hearing at which the stipulation, which forms the basis for the revised judgment, was presented to the court, bears out the proposition that the insurance was considered part of child support. In response to Mrs. Vaccaro's inquiry as to what would happen with the in-

surance funds if Dr. Vaccaro died, the trial court responded:

"That would mean it would go into guardianship to the children and you could make application to County Court for money to support these children. You are to be the guardian. . . ."

Likewise, the trial court made repeated reference to the fact that it would have continuing authority to modify the provision, thus clearly indicating it was not a part of the property division.

We hold, therefore, that the trial court correctly decided that the provisions of the 1957 revised divorce judgment relating to life insurance constituted a part of child support and not a part of the final property settlement.

Mrs. Vaccaro next contends that "[t]he original stipulation involving the division of estate was a contract or agreement as between the parties which was then ratified and confirmed by the court and made part of its order." Because the stipulation and order conferred rights upon the children, she argues that they have become third-party beneficiaries within the meaning of *Tweeddale v. Tweeddale* (1903), 116 Wis. 517, 93 N. W. 440, and therefore the provisions of the 1957 revised judgment, insofar as they affect the rights of the children, cannot be changed without their consent.

There appears to be some confusion in the case law as to whether a stipulation regarding alimony, support or property settlement, which is made in a divorce proceeding prior to judgment, results in contractual obligations.

In *Miner v. Miner* (1960), 10 Wis. 2d 438, 443, 444, 103 N. W. 2d 4, we stated the rule thusly:

"Agreements between parties in divorce actions are made in contemplation that the court must approve such agreements and usually that the provisions of the agree-

ment, with such modifications as the court shall make in the interest of justice, shall be a part of the court's judgment. . . . There is no such thing in this state as a divorce by consent or agreement. The parties cannot by stipulation proscribe, modify, or oust the court of its power to determine the disposition of property, alimony, support, custody, or other matters involved in a divorce proceeding. When a court follows and adopts an agreement of the parties making it a part of its judgment, the court does so on its own responsibility, and the provisions become its own judgment.

"In this case it appears there was a stipulation or consent of the parties in open court which become the adjudication of the court. However, there may be situations in which the parties enter into a formal contract or written agreement outside of court in which they finally settle all their financial rights and duties toward each other in contemplation of the uncertainties of the future. Sec. 247.10, Stats., . . . requires only that a contract or stipulation be approved by the court; it does not require the court to provide in its judgment the terms thereof as an adjudication . . . . When the court merely refers to such an agreement and approves it without making the provisions thereof a part of its judgment, the weight of authority is that such an agreement is not subject to modification by the court even though the circumstances of the parties change. The arrangement is contractual, not a judicial determination, and therefore no more subject to change by the court than the terms of any other private agreement. 2 Nelson, Divorce and Annulment (2d ed.), p. 407, sec. 17.03, and cases therein cited. See also Anno. 58 A. L. R. 639; Anno. 109 A. L. R. 1068. . . .

". . . However, the difficulty is in determining the nature and basis of a particular award. A stipulation or agreement amounting to no more than an understanding of what the parties desire and recommend to the court does not rise to the dignity of a contract. Here the court in its judgment did not clearly let the matter of alimony rest upon the stipulation. The award was not contractual, but by adjudication and subject to modification."

A somewhat contradictory position, however, was taken in *Estate of Boyd, supra,* page 381, where the court stated, rather overbroadly, "A stipulation in a divorce

action is in the nature of a contract." The only authority cited for that proposition is *Miner, supra.* We conclude, therefore, that *Estate of Boyd* cannot be taken as authority for the proposition that every such stipulation results in contractual obligations. As stated in *Miner,* the proper view is that contractual obligations arise only in situations where the court expressly refers to and approves a formal agreement between the parties, and not where, as here, the court merely adopts and to some extent modifies the parties' joint recommendations as to alimony, support or property settlement.

*Bliwas v. Bliwas* (1970), 47 Wis. 2d 635, 639, 640, 178 N. W. 2d 35, rejects, sub silentio, the expansive view taken in *Estate of Boyd, supra:*

". . . the enforcement of a family court order, which would not be enforceable without a prior stipulation of the parties that it be made part of the decree, rests not so much in the enforcement of a contractual obligation . . . as it does in recognizing that a person who agrees that something be included in a family court order, especially where he receives a benefit for so agreeing, is in a poor position to subsequently object to the court's doing what he requested the court to do. . . ."

Furthermore, as pointed out in Dr. Vaccaro's brief, even if this court were to decide that contractual obligations did arise, those obligations are subject to the court's power to modify the provisions, as stated in the judgment, the hearing at which the stipulation was submitted, and state statute. Sec. 247.32, Stats. Thus, even if the sons of Dr. Vaccaro were third-party beneficiaries, their contractual rights would be limited by the court's authority to modify or completely extinguish their interests.

We hold, therefore, that there are no third-party beneficiary interests which prevented the lower court from modifying the judgment with respect to child support.

*By the Court.*—Order affirmed.