IN the MATTER OF the ESTATE OF Edwin H. BARNES III, a/k/a Edwin Herman Barnes III:

ESTATE OF Edwin H. BARNES III, a/k/a Edwin Herman Barnes III, Appellant,

v.

Diane Barnes HALL and Gary Barnes, Respondents.

Court of Appeals

*No. 91-2833-FT. Oral argument May 22, 1992.—Decided June 24, 1992.*

(Also reported in 486 N.W.2d 575.)

1

3

On behalf of the appellant, the cause was submitted on the briefs of *Richard C. Brodek* and *Kenneth E.*

*Rusch* of *DeMark, Kolbe & Brodek, S.C.* of Racine. There was oral argument by *Richard C. Brodek.*

On behalf of the respondents, there was a brief and oral argument by *S. Michael Wilk* of *Heide, Hartley, Thom, Wilk & Guttormsen* of Kenosha.

Before Brown, Anderson and Snyder, JJ.

BROWN, J.   This case concerns the interpretation of a clause commonly found in divorce judgments whereby one party to a divorce is ordered to keep in force a life insurance policy with the children as beneficiaries. The question is whether the clause in a 1973 divorce judgment involving the deceased survives the termination of the support obligation. The twin children, now adults, contended, and the trial court agreed, that the intent was to create a "property settlement agreement" for the children. We reverse.

On September 4, 1973, a Final Judgment of Divorce was entered in the matter of Dr. Edwin H. Barnes III and June Barnes. The stipulation of the parties dated June 20, 1973 was contained in the judgment. The judgment provided, in part, that:

> The plaintiff [Dr. Barnes] shall further carry a Ten Thousand ($10,000.00) Dollar life insurance policy on his life for the benefit and use of the two youngest children of the parties, to wit: Diane and Gary. The plaintiff shall have the privilege of designating as beneficiary a trustee for the benefit of said two minor children, and the plaintiff shall not change the beneficiary or beneficiaries of said policy.

Prior to the divorce, Dr. Barnes had taken out and maintained a $10,000 life insurance policy with June as the beneficiary. Following the divorce, Dr. Barnes changed the policy, naming the twins, Diane and Gary, as benefi-

5

ciaries. The life insurance policy was maintained in this form until surrendered by Dr. Barnes in March 1990. He died shortly thereafter, on May 19. That November, Diane and Gary filed claims against Dr. Barnes' estate. Each claimed $5000. The estate objected to the claims. The trial court held that the clause was the result of a contract between Dr. Barnes and June, and that the children, as third party beneficiaries of that contract, had enforceable claims against the estate. The estate appeals from that conclusion.

Judgments are construed at the time of their entry and in the same manner as other written instruments. *Weston v. Holt,* 157 Wis. 2d 595, 600, 460 N.W.2d 776, 779 (Ct. App. 1990). Whether a contract is ambiguous is a question of law and therefore so is the question of whether a judgment is ambiguous. *See id.* Words or phrases are ambiguous when they are reasonably or fairly susceptible of more than one construction. *Id.*

This standard of review impacts mightily upon the estate's initial argument. The estate claims that stipulations of the parties to a divorce action which are incorporated into and become part of the final divorce judgment cannot be enforced on a contract theory. The argument lacks merit. Judgments are construed in the same way as contracts and, upon construction, are enforced in the same way as contracts. The focus is on finding the meaning of the judgment. We reject the estate's initial argument.

We move on to interpreting the clause. To determine its meaning, our first obligation is to see if it is plain on its face. Both parties present reasonable, albeit conflicting, constructions of the clause. The estate claims that this clause obviously was intended as an

6

adjunct to child support; its purpose was to insure that child support would continue for the two minor children (the oldest child was an adult at the time of the divorce) should Dr. Barnes die before their majority.

The estate points out that this was the fourth clause in the stipulation. The first clause dealt with property division—which normally would include insurance policies considered to be divisible if part of the marital estate. The estate argues that had the policy been meant as an assignment of marital property for the benefit of the children, it would have appeared in the first clause or in close proximity to that clause. Instead, the first clause is silent regarding this particular policy. The second clause deals with maintenance and the third clause concerns child support. The clause in question follows the support clause. The estate argues that, logically, the insurance policy in question was meant as an adjunct to child support.

The children argue that nowhere in the clause does it say that the insurance is limited to the children's minority. Nor does the clause spell out that it is intended as a "safety net" should the father die before the children reach majority. Finally, the children point out that the clause forbids the father from changing the beneficiary. The children conclude that the only logical interpretation of the clause is that the parties meant to give a portion of their marital estate to the children as third party beneficiaries.

We conclude that the clause is ambiguous. If judgments are ambiguous, construction is allowed and the court will consider the whole record, including the pleadings, findings of fact and conclusions of law. *Weston*, 157 Wis. 2d at 601, 460 N.W.2d at 779.

7

We have considered the whole record, including the complete divorce judgment. There are several references in the judgment to various insurance obligations. In the third paragraph, that concerning child support, the judgment states that Dr. Barnes must pay the cost of automobile liability insurance on the automobile that June is receiving as part of the marital division of the estate, until the minor children become eighteen years of age. Paragraph four, the same paragraph as the clause at issue, states that Dr. Barnes must carry mortgage insurance on his life until the house of the parties is sold or until the children reach eighteen. The clause at issue has no similar termination language. From this, it can be argued that the parties knew enough about termination language that they could have inserted it into the clause at issue if they so intended. On the other hand, there is no explicit statement that the parties intended this clause to be a property benefit for the twins. We cannot resolve the ambiguity from reading the judgment as a whole. Intent is at issue.

If there is ambiguity and intent is at issue, the intent of the parties is a question of fact. *See id.* Findings of fact are not set aside unless clearly erroneous. *Id.*

The trial court apparently felt that the clause was ambiguous for it not only entertained testimony about the clause's intent, the court's decision was, in part, based upon that testimony. The trial court heard and adopted the testimony of June. According to her, the one adult child and the two minor children were all to have $5000 policies on their father's life. At the time of the divorce, the adult child was already the beneficiary of a $5000 policy. The clause at issue here was merely a means of "equalization" among the three children. The

8

court adopted this testimony and found "equalization" to be the intent of the parties.

If this were a straight question of fact issue, we would stop here and affirm on the grounds that the finding regarding the intent of the clause is not clearly erroneous. However, that is not the major issue in this case. The real issue is whether the statutes in force in 1973 allowed divorcing spouses to agree to some sort of estate planning, as part of the divorce judgment, to benefit their children. If the answer to this question is "no," then the children ask us to decide whether, in spite of the fact that the law does not permit clauses of this nature, we still will permit its enforceability because the parties stipulated to it and are estopped from relying upon the law.

■ We first look to the statutes in force in 1973. Nowhere can we find a statement by the legislature allowing divorcing parties to carve away part of the marital estate for the benefit of their adult offspring.[1]

■ Next, we have researched the case law. The closest statement we can find is in *Vaccaro v. Vaccaro,* 67 Wis.

---

[1]We are aware that the statutes in force today give trial courts a limited right to set aside property in trust for children. The present statute dealing with property division, sec. 767.255, Stats., says in part:

> The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for the support, maintenance, education and general welfare of any minor children of the parties.

Although courts now have this limited right, it does not appear as though this language changes anything as regards adult children. The language specifically refers to setting aside property for the benefit of *minor* children.

2d 477, 227 N.W.2d 62 (1975). That case likewise involved a physician who had life insurance policies in force at the time of the divorce. He was ordered to keep $40,000 of life insurance, with the children as beneficiaries until the youngest child ceased being a minor. Years later, the former spouse petitioned the trial court for an order requiring Dr. Vaccaro to obtain cash from the insurance proceeds to pay for the college education of his children. Dr. Vaccaro opposed the petition. The supreme court framed the question as whether the life insurance provision was part of the property settlement or part of the support provisions. The court decided that it was part of child support. A keystone of its rationale was the following statement:

> The . . . judgment clearly indicates that the children are the beneficiaries of the policies. A final property division can be made only between husband and wife. Sec. 247.26, Stats. Therefore the provision is clearly a part of child support.

*Id.* at 483, 227 N.W.2d at 65. The statute discussed in *Vaccaro* was the same statute in force in 1973. The court's clear statement in *Vaccaro* dooms the children's position that in 1973 estate planning was allowed as part of a divorce settlement so that a portion of the marital estate could be set aside for the adult children's benefit. We also observe that, based on our reading of the present statutes, *Vaccaro*'s statement seems as strong and viable now as it was in 1975 when *Vaccaro* was written.

We have read the other cases which possibly could impact on this issue and find them inapplicable. The closest of these cases is *Richards v. Richards,* 58 Wis. 2d 290, 206 N.W.2d 134 (1973). The children of Jack Richards, by their guardian ad litem, brought an action to recover the proceeds of a life insurance policy on the life

10

of their father who had passed away. The divorce judgment between their parents contained a stipulation that the father would name the minor children as beneficiaries. The father later changed the beneficiary to his second wife. The supreme court concluded that the children were equitably entitled to the proceeds of the policy and that a constructive trust should be imposed on the proceeds for their benefit. *Id.* at 298–99, 206 N.W.2d at 138. The basis for the conclusion was the "wrongful" conduct of the father in violation of the divorce decree. *Id.*

The reason *Richards* is immaterial is because the children were minors when the father died. Had he not died, the father would have continued to be liable for supporting them. The policy guaranteed that some form of support would continue. The whole case was resolved in a support motif; it was not presented as a property division set-aside.

The only other case remotely appropriate for consideration is *In re Laev,* 115 Wis. 2d 168, 340 N.W.2d 223 (Ct. App. 1983). This court held that life insurance designating the children as beneficiaries by reason of a divorce judgment was includable in the decedent's estate. The court held that this provision created a personal liability which can be enforced and satisfied by the filing of a claim against the estate for the full amount required to be maintained. *Id.* at 181, 340 N.W.2d at 228–29. From this it can be argued that once a stipulated provision is included in the final divorce judgment by the court, that stipulation constitutes a legal obligation which only the court can discharge.

However, that argument begs the question, which is: can a divorce judgment be used to set aside property division assets for the benefit of children who have reached the age of majority? Because the court of

11

appeals in *Laev* was dealing with a tax question and not the precise issue before us, and because we do not know from the decision the age of the children in that case, we choose to limit its authority to its facts.

Regarding the issue of estoppel, the children raise the issue but cite no authority for why it should apply in this case. We may decline review of an issue inadequately briefed. *In re Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 (Ct. App. 1985). We exercise our prerogative to decline here because there is no record or argument regarding any of the estoppel elements.[2] In particular, there is nothing in the record indicating that the decedent received any reduction in support payments or any benefit in consideration for the insurance provisions contained in the divorce decree.

Having said all that, we issue this decision with a proviso. This opinion is shaped by the facts of this case and the posture in which this case came before the court. First, we underscore that the subject insurance policy was already in force during the marriage. It therefore was "property" and was subject to property division. This property, according to the findings of fact made by the trial court, was set aside for the children at the time of divorce. Thus, we are not dealing with the situation where, for example, the husband agrees to provide for the college education of the children of the marriage. That scenario has nothing to do with the setting aside of property for the adult children's benefit, but rather is a

---

[2]The elements of estoppel are action on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or non-action, to his or her detriment. *Schmitz v. Schmitz,* 70 Wis. 2d 882, 888, 236 N.W.2d 657, 661 (1975).

promise to pay. The decision here does not impact upon that, or similar, scenarios.

Second, we do not hold that estoppel, pursuant to *Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984), is unavailable as a remedy. There well may be a case, similar to this one, where property division was set aside by the parties, pursuant to stipulation, for the benefit of the adult children or some other third party. The record also may show, however, that one spouse benefited in terms of support, maintenance or property division in consideration for the agreement, and that the other party relied on it to his or her detriment. Whether *Rintelman* would apply will be decided if and when that case comes before a court. We hold only that the facts of this case do not show estoppel.

Third, while some may argue that there is "nothing wrong" with divorcing parties using the divorce to do some estate planning and that it is a common occurrence, we do not have any evidence that it is common at all. We also point out that whether to allow estate planning in divorces because there is "nothing wrong" with it is an argument for the legislature, not this court. We further observe that parties can always agree to make a gift to a third person outside of the divorce arena.

We reverse the trial court and hold that because the law does not allow estate planning in a divorce for purposes of creating a property benefit for adult children, the clause at issue, as a matter of law, must be treated as one relating to child support.

*By the Court.*—Judgment reversed.