IN RE the MARRIAGE OF: Sharon BROWN, Petitioner-Appellant,

v.

Sheldon BROWN, Respondent-Respondent.

Court of Appeals

*No. 92–3027–FT. Submitted on briefs April 16, 1993.—Decided June 2, 1993.*

(Also reported in 503 N.W.2d 280.)

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Bruce Chudacoff* of *Chudacoff and Liebzeit* of Appleton.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Sheldon Brown*, pro se.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Sharon Brown appeals the circuit court order modifying child support pursuant to the "serial family payer" provisions of the percentage standards in Wis. Adm. Code § HSS 80.[1] Sharon contends

---

[1] This is an expedited appeal under Rule 809.17, Stats.

that her former husband, Sheldon Brown, is not a "serial family payer." We agree and reverse the order. We hold that in order for the serial payer provisions of the percentage standards to be applicable, the "additional child support obligation" referred to in § HSS 80.02(21) must be the result of a court order, and the support obligation being calculated must be for children from a subsequent family or a subsequent paternity judgment.

Sharon and Sheldon married in 1984 and had one child, who is still a minor. They were divorced in 1987, and Sheldon was required to pay 17% of his gross income for child support pursuant to the general percentage standards in § HSS 80. Sheldon remarried and has three minor children from his second marriage. His second marriage is still intact.

Sheldon brought a motion under sec. 767.32, Stats., to modify his child support due to the fact that he has minor children in his second family. He requested that the court utilize § HSS 80.04(1), the "serial family payer" provisions of the percentage standards in resetting his child support obligation for his first child. The family court commissioner determined that the "serial family payer" provisions did not apply and refused to modify the existing support order. Sheldon appealed to the circuit court, which ruled that the "serial family payer" provisions applied to Sheldon. It therefore reduced his child support obligation from 17% to 12.1%.[2] Sharon appeals that order.

---

[2] This reduction was accomplished according to § HSS 80.04 (1) as follows: 29%, the recommended percentage for three children, was reduced from Sheldon's income for the care of the three children in his second marriage. Child support was then set at 17% of the remaining adjusted base (71% of the original

■ Interpretation of a regulation, like that of a statute, is a question of law that we review independently of the circuit court's determination. *Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 846-47, 454 N.W.2d 55, 58 (Ct. App. 1990). Our purpose is to ascertain and give effect to the intent of the regulation. *In re P.A.K.*, 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681 (1984). In ascertaining the intent, our first resort is to the plain language of the regulation. *In re J.A.L.*, 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991). If it clearly and unambiguously sets forth the intent, it is our duty merely to apply that intent to the facts and circumstances of the question presented. *Id.* A regulation is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *State v. Martin*, 162 Wis. 2d 883, 894, 470 N.W.2d 900, 904 (1991).

■ Section HSS 80.04(1) provides a formula for determining the child support obligation of a serial family payer. Section HSS 80.02(21) defines "serial family payer" as "a payer with an existing child support obligation who incurs an additional child support obligation in a subsequent family or as a result of a paternity judgment." Wis. Adm. Code § HSS 80.02(21). Commentators have been uncertain whether the serial family payer provisions may be utilized when revising child support. *See* Connie Chesnik, *HSS 80 Revisited: The Percentage of Income Standard Experience,* 10 Wis. J. Fam. Law 70, 85-86 (1990). The phrase "an additional child support obligation" within the serial family payer definition is capable of being understood (1) to

base), which amounts to 12.1% of the original base [.17 × .71 = .121].

restrict obligations to those resulting from a court order, or (2) to include other obligations, such as the obligation arising from having children in an intact subsequent family. Because there are two reasonable interpretations, we conclude that the definition of "serial family payer" is ambiguous.

When construing an ambiguous provision, we look to the history, context, subject matter and object of that provision. *Voss v. Middleton*, 162 Wis. 2d 737, 749, 470 N.W.2d 625, 629 (1991). The context of the "serial family payer" definition can be gleaned from § HSS 80.04(1), which determines serial family payer child support and states:

(1) DETERMINING THE CHILD SUPPORT OBLIGATION OF A SERIAL FAMILY PAYER. For a serial family payer the child support obligation may be determined as follows:

(a) Determine the payer's base in accordance with s. HSS 80.03(1) (intro.);

(b) Determine the payer's adjusted base by applying one of the following methods, as appropriate:

1. When the payer is subject to an existing support order, subtract the amount of the court-ordered support, if it is being paid, from the base to get the adjusted base; or

2. When the payer has other children legally under his or her care who are not subject to a court order,[3] multiply the appropriate percentage for the number of children legally under the payer's care by

---

[3] The subsequent family or subsequent paternity judgment requirement we today hold has the effect of clarifying that the "children legally under his or her care" phrase means only children legally under his or her care who precede the children for whom support is being calculated.

the base as determined on the worksheet. Subtract this amount from the base to determine the adjusted base; and

(c) Multiply the appropriate percentage for the number of children subject to the new order by the adjusted base determined in either par. (b)1 or 2 to determine the child support obligation.

Wis. Adm. Code § HSS 80.04(1).

We recently interpreted the definition of "serial family payer in *Sommerfield v. Sommerfield*, 154 Wis. 2d 840, 846-47, 454 N.W.2d 55, 58 (Ct. App. 1990). The husband in *Sommerfield* had custody of a minor child from a previous marriage. Consequently, he was not subject to a child support order. He remarried and had another child from a second marriage. In his divorce from this second marriage, where his wife was awarded custody of the child, we recognized the applicability of the serial family payer provisions. *Id.* at 848, 454 N.W.2d at 58. In fact, the *Sommerfield* scenario is contemplated by the method 2 calculation in § HSS 80.04(1)(b).

We see two factors in *Sommerfield* as important in determining the parent was a serial family payer. First, the child support being determined was for children from a subsequent family or a subsequent paternity judgment.[4] Second, the court was establishing an order for this support. In the instant case,

---

[4] By "subsequent family" or "subsequent paternity judgment," we mean a more recent family or paternity judgment. We do not mean any judgment other than the initial family or paternity judgment. For example, if a paying spouse had three marriages, which produced, respectively 1, 3 and 2 children and all ended in divorce, according to application of the serial family payer provisions of the percentage standards, the support due,

■

however, the child support being determined is not for children of a subsequent family, but for the children of the initial family.

■

We may also look to the notes following the administrative regulations in determining the meaning of a regulation. *Sommerfield,* 154 Wis. 2d at 847-48, 454 N.W.2d at 58. In *Sommerfield*, we looked to the example in § HSS 80.04(1) Note 2, that featured a payer with no prior support order, in holding that a custodial parent with no prior child support order can have a prior child support obligation, and thus be a serial family payer. *Sommerfield,* 154 Wis. 2d at 847-48, 454 N.W.2d at 58.

Section HSS 80.04(1)'s Notes contain two examples. The first shows "how the child support obligation is determined for a serial family payer whose additional child support obligation has been incurred for a subsequent family." This example displays a payer

assuming the payer made $1,000 per month, would be calculated as follows:

| Family or Pat. Judgment Due | Children | Percentage | Base | Support |
|---|---|---|---|---|
| 1 | 1 | 17% | $1,000.00 | $170.00 |
| 2 | 3 | 29% | | 830.00 |
| 240.70 | | | | |
| 3 | 2 | 25% | 589.30 | |
| 147.32 | | | | |

If the payer had additional children from a fourth relationship and sought to reduce his or her obligations for the previous children, none of the children from the first three marriages would be considered children from "subsequent families."

with an existing monthly support order getting divorced from his or her second spouse. Wis. Adm. Code § HSS 80.04(1), Note 1. The second example shows "how the child support obligation is determined for a serial family payer whose additional child support obligation has been incurred as a result of a paternity judgment." *Id.* at Note 2. These examples display a payer and his wife who have children of their own, where the payer is adjudicated the father of another child in a paternity judgment. In both of these examples, the "additional child support obligation" is the result of a court order. Also, in both cases, the support being determined is support for children of a subsequent family or subsequent paternity order.

Moreover, to hold that Sheldon is a serial family payer would lead to an absurd result. Not only would payer spouses be able to decrease their child support obligation by simply having more children in a subsequent family, but the child support of the original children may revert back to its initial value if the subsequent family split up.[5] This absurd result was not contemplated by the "serial family payer" provisions.

---

[5] For example, a payer spouse may pay child support of 17% for one child from a first marriage. After remarrying, and having three additional children, the paying spouse could petition, as Sheldon has here, to reduce the child support paid to the first child to 12.1%. *See supra,* text accompanying note 2. Here the child from the first marriage would be treated as the "additional child support obligation." Then, if the payer spouse's second marriage ended in divorce, with the first marriage's payer spouse again being a payer spouse, the first child's support could be reset again. If the first nonpaying spouse petitioned for modification, the children from the second marriage could be treated as the "additional child support obligation," according to § HSS 80.04, and the child support for the child from the first marriage could be reset at 17%.

The percentage standards, of which the serial family payer provisions are a part, were meant to provide a uniform predictable measure of child support, not a variant method where a child's support can be reduced or increased by subsequent changes outside his or her family. Only a construction of § HSS 80.02(21) that requires (a) the additional support obligation to be by court order, and (b) the support being determined be for children from a subsequent family or subsequent paternity order, provides this uniform predictability.

Additionally, the apparent intent of § HSS 80.04 is to consider the support obligation to the earlier born children and then in a court order determine the child support obligation for subsequent children. This priority makes sense and good public policy because a parent's voluntary reduction of the ability to support a family by having more children should not automatically penalize the earlier born children. Although both earlier and subsequently born children are innocent and have no control over their situation, the parent who brings children into the world knowing the existing prior obligation should not be entitled to an automatic reduction of child support. *See Besaw v. Besaw*, 89 Wis. 2d 509, 519, 279 N.W.2d 192, 196 (1979) (citing 2A Nelson, *Divorce and Annulment*, § 17.12, at 65-67 (2d ed. 1966)).

Also we note that the circuit court may deviate from the percentage standards after considering the appropriate factors, set forth in secs. 767.25(1m) or 767.51(5), Stats., and determining that application of the percentage standards would be unfair. Section 767.32(2m), Stats.

We therefore conclude that Sheldon is not a serial family payer because he has not incurred "an additional child support obligation in a subsequent family." The additional child support obligation in a subsequent family must be incurred as a result of a court order,[6] and the support being determined must be for children from a subsequent family or a subsequent paternity judgment.

*By the Court.*—Order reversed and cause remanded.

---

[6] We note that in dicta in *Weston v. Holt*, 157 Wis. 2d 595, 460 N.W.2d 776 (Ct. App. 1990), we discussed the application of § HSS 80.04(1) to a situation where no order underlay the "additional child support obligation." That case held only that the trial court need either consider the "total economic circumstances" or apply the percentage standards on modification of child support. *Weston*, 157 Wis. 2d at 604-05, 460 N.W.2d at 781. In addition to being dicta, this discussion occurred when a circuit court was not mandated to apply the percentage standards in proceedings to modify child support. *Id.* at 604, 460 N.W.2d at 780. Presently, courts must apply the percentage standards in a motion to modify under sec. 767.32, Stats., unless they find after considering appropriate factors, that application of the percentage standards would be unfair. *See* sec. 767.32(2), Stats. For the reasons listed, we decline to follow the *Weston* dicta.