In re the Marriage of:

Rick MOLSTAD, Petitioner-Respondent,

v.

Jeannette MOLSTAD, n/k/a Jeannette Biser,
Respondent-Appellant.

Court of Appeals

*No. 94-3324-FT. Submitted on briefs March 21,
1995.—Decided April 25, 1995.*

(Also reported in 535 N.W.2d 63.)

603

For the respondent-appellant the cause was submitted on the brief of *Thomas J. Molinaro* of *Thomas J. Molinaro, S.C.* of Wausau.

For the petitioner-respondent the cause was submitted on the brief of *Scott A. Reinhard* of *Slaby, Deda, Marshall & Reinhard* of Park Falls.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.    Jeannette Molstad, n/k/a Jeannette Biser, appeals an order revising her former husband Rick Molstad's obligation for child support to $65 per week for the entire year.[1] Although the trial court increased Rick's child support obligation, Jeannette contends that the trial court considered improper factors in making its child support determination, which led to a lower increase than that to which she was entitled. Specifically, Jeannette argues that a trial court's child support determination is limited to those factors outlined in § 767.23, STATS., and WIS. ADM. CODE § HSS 80. Accordingly, Jeannette contends that the trial court erred by improperly considering that: (1) the children are placed with Rick for approximately thirty percent of the year; and (2) Rick is remarried and has two children as a result of that marriage. Because we

---

[1] This is an expedited appeal under RULE 809.17, STATS.

conclude that the trial court did not err in making its child support determination, the order is affirmed.

In the original judgment of divorce, Rick was required to pay Jeannette child support in the amount of $50 per week for forty-two weeks out of the year. In 1987, the judgment of divorce was amended to increase the amount of child support to $65 per week for forty-two weeks out of the year. In 1994, Jeannette again filed a motion to revise judgment, arguing that Rick's child support obligation should be increased because his income rose approximately $12,500 since 1987. Jeannette argued that under the statutory percentage standards enunciated in § 767.23, STATS., and WIS. ADM. CODE § HSS 80.03, Rick's child support obligation should be increased to 25% of his salary. Rick opposed the use of the statutory standards on the grounds that their application would lead to an unfair result.

At the conclusion of the hearing, the trial court denied Jeannette's request for application of the statutory standards. The court did, however, increase Rick's child support obligation to $65 per week for every week of the year, which represented a 24% increase in his child support obligation. The trial court found that the application of the statutory standards would be inequitable for several reasons, including: (1) the fact that Rick has custody of the children for approximately 30% of the year; (2) the travel expenses Rick incurred to exercise his visitation rights; and (3) the fact that Rick paid health insurance premiums for the children of $675 per year in addition to his child support payments. The trial court also determined that if it were to apply the statutory standards, Rick's income would be approximately $14,000 per year after the payment of taxes and child support, while Jeannette's income would rise to $24,000. Finally, the court noted that

application of the statutory standards would be inequitable because Rick had obligations to his second family. The trial court, however, specifically noted that Rick's second family did not make him a serial family payer under WIS. ADM. CODE § HSS 80.

■

Jeannette contends that the trial court erroneously exercised its discretion because it considered improper factors in reaching its determination as to the amount of child support Rick was obligated to pay. The determination of child support is committed to the sound discretion of the trial court. *Prosser v. Cook*, 185 Wis. 2d 745, 751, 519 N.W.2d 649, 651 (Ct. App. 1994). Accordingly, whether the trial court uses the statutory standards in determining the amount of child support is a discretionary decision. *Id.* However, regardless whether the trial court applies the statutory standards, its decision must be based on an accurate reflection of the law. *Id.* We will reverse the trial court's decision if the court misapplies the law or bases its decision upon an erroneous view of the law. *Id.*

Relying on *Prosser*, Jeannette first contends that the trial court erred in its child support determination by considering the fact that Rick has physical custody of the children for 30% of the year, during which time he is fully responsible for the children's support. Jeannette argues that in *Prosser*, this court specifically held that the amount of time the children are placed with the non-custodial parent is not a proper factor to be considered in the child support determination. Jeannette's reliance on *Prosser* is misplaced.

In *Prosser*, the trial court specifically applied the percentage standards in WIS. ADM. CODE § HSS 80.03 to determine the "shared-time payer's" child support obligation. *Id.* at 751-52, 519 N.W.2d at 651. The trial

court then reduced that amount by 50% to account for the amount of time the children spent with the paying parent. *Id.* We reversed the trial court's decision, concluding that it misapplied the percentage standards. *Id.* at 751-52, 519 N.W.2d at 651-52. In arriving at this conclusion, we noted that the child support standards assume that the children are physically placed with the paying parent 30% of the year. *Id.* at 751, 519 N.W.2d at 651. Thus, to accomplish its stated purpose and to properly apply the standards, the trial court was only required to reduce the paying parent's child support obligation by 20%. *Id.* at 751-52, 519 N.W.2d at 651-52. Because the trial court reduced the paying parent's obligation by 50%, it gave the paying parent credit for the 30% that was already accounted for in the child support standards. *Id.*

■

*Prosser* stands only for the proposition that if the trial court decides to apply the mathematical formulas contained in the child support standards, it must apply the formula correctly. Contrary to Jeannette's assertion, however, *Prosser* does not preclude the trial court from considering the time a child is placed with the paying parent in making its child support determination, nor does it require the trial court to apply the mathematical formulas contained in the child support standards. The child support determination is left to the trial court's discretion. *Id.* at 751, 519 N.W.2d at 651. In exercising its discretion, the trial court may consider those factors that are relevant to the child support determination. Section 767.25(1m)(i), STATS. Here, the trial court could reasonably conclude that the amount of time the children spent with Rick was relevant to this determination because it is directly related to financial resources that Jeannette will require to

support the children when they are in her care. Accordingly, we conclude that the trial court properly considered this factor in determining whether to apply the standards.

Jeannette next contends that the trial court's child support determination improperly took into account the fact that Rick remarried and had two children as a result of that marriage. Jeannette argues that this factor was expressly precluded from consideration by this court's decision in *Brown v. Brown*, 177 Wis. 2d 512, 503 N.W.2d 280 (Ct. App. 1993). We do not agree.

*Brown* stands only for the proposition that a subsequent family does not render the paying parent a serial family payer under the child support standards. Consistent with *Brown*, the trial court in this case specifically noted that the existence of Rick's second family did not entitle him to serial family status. Nothing in *Brown*, however, precludes the trial court from considering the paying parent's second family in making its child support determination. Although the existence of a second family does not entitle the paying parent to an "automatic reduction of child support" to his or her initial family, *id.* at 521, 503 N.W.2d at 283, the court may consider "the needs of any person, other than the child, whom either party is legally obligated to support" in deciding whether to apply the standards. Section 767.25(1m)(bz), STATS. The members of Rick's second family are certainly persons whom Rick is legally obligated to support. Thus, the existence of a second family is a factor that may be considered in determining whether the standards should be applied and what the appropriate level of child support should be. Because the trial court did not misuse the fact that Rick had a second family to conclude that he was enti-

tled to serial family payer status, we conclude that the court properly considered the existence of his second family in determining whether to apply the standards.

In sum, the trial court's child support determination exhibited a proper application of the law and we therefore conclude that it properly exercised its discretion.

*By the Court.*—Order affirmed.